In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2618

MARVIN H. & GAIL L. RICHER,

*Plaintiffs-Appellants*,

*v.*

PATRICK MOREHEAD,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 14 C 50043 — **Philip G. Reinhard**, *Judge*.

ARGUED AUGUST 4, 2015 — DECIDED AUGUST 11, 2015

Before POSNER, KANNE, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal presents a question of contract interpretation. The Richers, a married couple, filed for bankruptcy. Morehead, who had invested in commercial real estate owned by a trust controlled by Mr. Richer, filed an unsecured claim for $945,000 in the bankruptcy proceeding. The Richers filed an adversary action claiming that Morehead's only lawful interest in the property was to re-

ceive a share of the net proceeds of the property if and when it was sold, which hadn't happened. The bankruptcy judge disagreed with the Richers, upheld Morehead's claim, and was affirmed by the district court, precipitating the Richers' appeal to us.

On November 25, 2005, Richer and Morehead had executed an "Equity Participation Agreement" in which Morehead had agreed to pay Richer $700,000 for the right to receive 8 percent of the net proceeds from any sale of the property of the trust. The agreement provided no security for Morehead, but did give him "the sole and exclusive option to convert his Participation Interest to a Demand Note payable within one hundred eighty (180) days of conversion." (The agreement calls the option the "Conversion Option.") If he exercised that right on the third, fourth, or fifth anniversary date (that is, November 25 of 2008, 2009, or 2010), the value of the demand note would be $700,000 plus 7 percent simple interest, which jacked up Morehead's claim to $945,000. The agreement went on to provide in a separate section that any notice, request, demand, or other communication governed by the agreement "shall be in writing and shall be delivered by hand or mailed by certified mail, return receipt requested, postage prepaid, or by simultaneous fax transmission." The parties agreed that Illinois law would govern the interpretation of the agreement should a dispute arise.

Four years after the Equity Participation Agreement was signed, minus one day (and thus on November 24), Morehead sent Richer by certified mail return receipt requested a letter purporting to convert Morehead's participation interest to a demand note for $700,000 (plus interest), effective the

day after the letter was mailed, November 25, 2009—the anniversary date. The Richers argue that the letter had to be mailed or otherwise communicated to them *on* November 25, the anniversary date, neither before nor after. The Equity Participation Agreement provides that "the Conversion Option is exercised on the … anniversary date," and the Richers argue that since the mode of exercise is by a written communication, that communication too must be initiated (though not necessarily received) on the anniversary date. Yet in the same paragraph the reader is told that the participant (Morehead) "will exercise this option by written notice to Owner [of the property in which Morehead invested, i.e., Richer's trust], specifying the date of the conversion election (no earlier than the date of the letter)." The implication is that the exercise of a conversion option occurs *on or after* the date of the letter—for "no earlier" doesn't mean "no earlier and no later."

A particular oddity of the Richers' argument, though not one important to this case given that the letter announcing the exercise of the conversion option predated the option-conversion date by only one day, is that the property owner is better off the earlier the announcement of the investor's intent to exercise the option. An early announcement gives the owner more time to take steps to ameliorate the effect of the exercise of the option on his business—time, for example, to obtain the money required to satisfy the option demand. And even though the owner has 180 days after the conversion to make final payment, he is likely to welcome more time—people are rarely in a hurry to pay their debts.

So both the language of the option provision and the common sense of the separate provision relating to notifica-

tion of the exercise of the option support Morehead's interpretation—that notification may precede the anniversary date on which the option will be exercised, but cannot follow that date. Notice too that if November 25 happens to be a holiday, a letter mailed that day would have no postmark, and so it might be impossible to determine whether the letter had been mailed that day or a different day. And even if no more can be said than that Morehead's interpretation of the Equity Participation Agreement is more plausible than Richers', that's enough to make Morehead the prevailing party. We therefore agree with the bankruptcy court that Morehead complied with the terms of the conversion option.

We also agree that because the parties consented to have this issue of Illinois common law decided by the bankruptcy judge even though bankruptcy judges are not Article III judges, the bankruptcy judge was acting within his jurisdiction in interpreting the Equity Participation Agreement. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). The parties' consent was implicit, but implied consent is good enough, *id.* at 1948 ("nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express"), at least when as in this case the parties are sophisticated businessmen represented by counsel who can be presumed to be aware of their clients' legal rights. Alternatively (and equivalently) the parties forfeited any objection to the bankruptcy court's adjudication of the contract claim by failing to object at any point during the litigation to the bankruptcy judge's adjudicating the claim.

AFFIRMED.